IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 22-cr-00438 |
| ) | |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| TAURIAL D. MINTZ, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Taurial D. Mintz is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Before the Court is his motion to dismiss the indictment on Second Amendment grounds in light of recent Supreme Court case *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022). Mintz also challenges the statute as unconstitutionally vague in violation of the Fifth Amendment. For the following reasons, the motion [47] is denied.

**Background**

At the time of the offense, Mintz had a criminal history that included a May 2, 2019 conviction for Burglary and a September 14, 2020 conviction for Aggravated Unlawful Possession of a Stolen Motor vehicle.

On March 20, 2022, Mintz, while masked and armed, engaged in a hand-to-hand drug sale near the 1600 block of W. 79th Street, in Chicago. Law enforcement agents observed him pull out a firearm and brandish it at a passing vehicle. When officers approached Mintz near a convenient store shortly after, he had a loaded Jennings Model Nine, 9mm semi-automatic pistol in his front sweatshirt pocket. Mintz was also carrying a satchel that contained individually wrapped bundles of cocaine.

On September 1, 2022, a federal grand jury returned a three-count indictment charging Mintz with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g) (Count One); possession of cocaine with intent to distribute, in violation of 18 U.S.C. § 841(a)(1) (Count Two); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Mintz now moves to dismiss Count One the indictment as unconstitutional in light of *Bruen*, 142 S. Ct. 2111 and as unconstitutionally vague in violation of the Fifth Amendment.

**Legal Standard**

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds. *See United States v. Coscia*, 866 F.3d 782, 790 (7th Cir. 2017) (considering defendant's contention that the indictment must be dismissed because the statute under which it is brought is unconstitutionally vague). A court may decide all questions of law raised in a motion to dismiss, including the constitutionality and interpretation of a federal statute. *See United States v. Sorich*, 523 F.3d 702, 706 (7th Cir. 2008).

**Discussion**

    A. Second Amendment

The Second Amendment to the United States Constitution states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment guarantees the right of "law-abiding, responsible citizens" to keep and bear arms for self-defense. *District of Columbia v. Heller,* 554 U.S. 570, 635 (2008).

In *Bruen,* the Supreme Court announced a new test for analyzing the constitutionality of firearm restrictions. 142 S. Ct. at 2127. First, courts must determine whether the "Second

Amendment's plain text covers an individual's conduct." *Id.* at 2129–30. If so, the Constitution presumptively protects that conduct and the burden shifts to the government to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126. Only then may the Court conclude that the "individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10, 81 S. Ct. 997, 6 L. Ed. 2d 105 (1961)); *see also United States v. Rahimi*, No. 22-915, 2024 WL 3074728, at *6 (U.S. June 21, 2024) (applying *Bruen*).

The Seventh Circuit clarified the analysis demanded by *Bruen*'s text-and-history test in considering whether Section 922(g)(1) is constitutional. *See Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023). *Atkinson* explained that the government could successfully defend modern-day arms regulations—especially those "unimaginable at the founding"—by analogy. *Id.* at 1021. The Seventh Circuit made clear that the government need not "pinpoint a dead ringer—a well-established and representative historical *analogue* will do." *Id.* That said, pointing to "only a couple of isolated historical facts and incidents, offering no detail about their application and import[,]" would not suffice. *Id.* at 1022. As further guidance, the Seventh Circuit proposed a set of "interrelated and non-exhaustive questions [that] may help focus the proper analysis:"

1. Does [Section 922(g)(1)] address a "general societal problem that has persisted since the 18th century?" *Bruen*, 142 S. Ct. at 2131. If this problem existed during a relevant historical period, did earlier generations address it with similar or "materially different means?" *Id.*

2. What does history tell us about disarming those convicted of crimes generally and of felonies in particular? Among other sources, the parties could look to commentary from the Founders, proposals emerging from the states' constitutional ratifying conventions, any actual practices of disarming felons or criminals more generally around the time of the Founding, and treatment of felons outside of the gun context (to the extent this treatment is probative of the Founders' views of the Second Amendment). When considering historical regulations and practices, the key question is whether those regulations and practices are comparable in substance to the restriction[s] imposed by

[Section 922(g)(1)]. To answer the question, . . . the parties should consider how the breadth, severity, and the underlying rationale of the historical examples stack up against [Section 922(g)(1)].

3. Are there broader historical analogues to [Section 922(g)(1)] during the periods that *Bruen* emphasized, including, but not limited to, laws disarming "dangerous" groups other than felons? The parties should not stop at compiling lists of historical firearms regulations and practices. The proper inquiry, as we have explained, should focus on how the substance of the historical examples compares to [Section 922(g)(1)].

4. If the [parties'] historical inquiry identifies analogous laws, do those laws supply enough of a historical tradition (as opposed to isolated instances of regulation) to support [Section 922(g)(1)]? On this front, the parties should provide details about the enforcement, impact, or judicial scrutiny of these laws, to the extent possible.

5. If history supports [Defendant's] call for individualized assessments or for a distinction between violent and non-violent felonies, how do we define a non-violent or a non-dangerous felony? And what evidence can a court consider in assessing whether a particular felony conviction was violent? For instance, can a court consider the felony conviction itself, the facts of the underlying crime, or sentencing enhancements? *Bruen* shows that these distinctions should also have firm historical support. *See* 142 S. Ct. at 2132–33 (explaining that the court must assess whether modern and historical regulations are "relevantly similar," including in terms of how and why the regulations burden gun rights).

*Atkinson*, 70 F.4th at 1023–24. The Seventh Circuit declined a second opportunity to reach the question of constitutionality of Section 922(g)(1) in *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024). In *Gay*, the defendant challenged his conviction under Section 922(g)(1) on appeal, arguing that the Second Amendment permitted persons with felony convictions like himself to possess firearms. *Id.* The Seventh Circuit noted that Gay's argument was "hard to square" with the language from *Heller* that "longstanding prohibitions on the possession of firearms by felons." *Id.* ("Justices Alito and Kavanaugh, whose votes were essential to the majority, wrote separately to say that *Bruen* did not change anything about *Heller*.") (citing *Bruen*, 597 U.S. at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm ... Nor have we disturbed

4

anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns."). The court proceeded, however, to assume without deciding "for the sake of argument that there is *some room* for as-applied challenges" to § 922(g)(1), and rejected the challenge from Gay. *Id.* at 846–847. Specifically, the court thus concluded that Gay was "not a 'law-abiding, responsible' person who has a constitutional right to possess firearms" given his criminal history and the fact he violated the statue while on parole. Thus, the court rejected his attempt to challenge his conviction under § 922(g)(1). *Id.*

Notably, the Seventh Circuit declined to address or even acknowledge the *Atkinson* analysis when deciding *Gay*. As a result, several lower courts have applied *Gay* and *Atkinson* in a variety of ways in Section 922(g)(1) cases. At least one district court has found that *Gay* "forecloses any facial invalidation of § 922(g)(1) under the Second Amendment." *United States v. McIntosh*, No. 21-CR-188, 2024 WL 2018277, at *1 (N.D. Ill. May 6, 2024) (Blakey, J.). Other courts have interpreted *Gay* differently. *See United States v. Hurnes*, No. 1:22-CR-00057, 2024 WL 2701099, at *5 (N.D. Ill. May 24, 2024) (Chang, J) (finding that "*Gay*'s direct holding was that parolees have a reduced right to possess firearms."); *United States v. McKay*, No. 23 CR 443, 2024 WL 1767605, at *4 (N.D. Ill. Apr. 24, 2024) (Kendall, J.) (applying *Gay* in analyzing as-applied challenge); *United States v. Head*, No. 23 CR 00450-1, 2024 WL 2292236, at *3 (N.D. Ill. May 21, 2024) (Maldonado, J.) (interpreting *Gay* as suggesting that "convicted felons on parole may not fall under the protection of the Second Amendment at all.")

In this Court's view, the Seventh Circuit's holding in *Gay* appears to have created two frameworks for criminal defendants to raise as-applied challenges to Section 922(g)(1). The first framework, outlined in *Gay,* is the "law-abiding citizen" test. In *Gay*, the Seventh Circuit used the Bruen's repeated use of the phrase "law-abiding citizen" to suggest that where there is room for as-applied challenges, whether a criminal defendant is a "law abiding citizen" is inherent to any as-

5

applied challenged under *Bruen*. *See Gay*, 98 F.4th at 846. The second framework for raising as-applied challenges appears in *Atkinson*. Under *Atkinson*, courts are required to determine if there is a historical basis for implementing as-applied challenges based on the government's historical analogues. *See Head*, 2024 WL 2292236, at *14 ("The fifth question under *Atkinson* asks lower courts to examine whether there is historical support for individualized assessment of the Second Amendment protection based on the nature of the particular felony convictions at issue."); *see also United States of America v. Darrell Griffin*, No. 21-CR-00693, 2023 WL 8281564 (N.D. Ill. Nov. 30, 2023) (Coleman, J.) (applying the fifth question in Atkinson in analyzing the government's historical analogues.)

With full awareness of these various decisions, the Court turns to Mintz's constitutional challenges. First, Mintz argues that Section 922(g)(1) is unconstitutional in light of *Bruen*, 142 S. Ct. 2111. Second, Mintz argues that Section 922(g)(1) is unconstitutionally vague in violation of the Fifth Amendment.

*A. Bruen*

First, Defendant challenges the constitutionality of Section 922(g)(1) under *Bruen*. This Court recently issued opinions on identical § 922(g)(1) challenges. *See United States of America v. Dionte Vaughns*, No. 22-CR-00636, 2023 WL 8258575 (N.D. Ill. Nov. 29, 2023) (Coleman, J.); *United States of America v. Tyriiq Washington*, No. 23-CR-00274, 2023 WL 8258654 (N.D. Ill. Nov. 29, 2023) (Coleman, J.); *Griffin*, 2023 WL 8281564. In each opinion, this Court held that that felons are included in "the people" protected by the Second Amendment. *Vaughns*, 2023 WL 8258575, at *4; *Washington*, 2023 WL 8258654, at *4; *Griffin*, 2023 WL 8281564, at *4. Furthermore, the Court held that the well-established record of British loyalist law supplies a sufficient historical tradition to support enforcement of Section 922(g)(1). *Vaughns*, 2023 WL 8258575, at * 8; *Washington*, 2023 WL 8258654, at *8; *Griffin*, 2023 WL 8281564, at *8. The Court adopts and incorporates the reasoning

of those opinions. Mintz's arguments are virtually identical to those made in the opinions above. Thus, this Court stands on its prior rulings finding that Section 922(g)(1) is facially constitutional.

The Court declines to find that Section 922(g)(1) is unconstitutional as-applied to Mintz. Here, neither *Atkinson*'s "historical analogue" framework nor *Gay*'s "law-abiding citizen framework help Mintz in his as-applied challenge. Mintz's criminal history involved burglary and aggravated unlawful possession of a motor vehicle. In fact, during Mintz's 2020 conviction for aggravated unlawful possession of a motor vehicle, he refused to stop at the direction of a peace officer, and engaged in a high-speed car chase with law enforcement officers from four jurisdictions. He refused to be attempted to flee on foot and two firearms were recovered from the vehicle. This criminal history demonstrates that Mintz cannot be trusted with dangerous instrumentalities. Further, the underlying circumstances showed that Mintz was arrested while masked and armed, engaged in a hand-to-hand drug sale. Law enforcement agents also observed him pull out a firearm and brandish it at a passing vehicle. Based on this evidence, the Court finds that Mintz's criminal record and the circumstances of his arrest support a finding that he poses a risk to public safety such that he cannot be trusted to use a weapon responsibly under *Atkinson*. Additionally, the Court finds that Mintz is not a "law-abiding citizen" under *Gay*. Thus, this Court finds that as applied to Mintz, Section 922(g)(1) is constitutional.

### B. *Vagueness*

The next issue is whether Section 922(g)(1) is unconstitutionally vague. The Fifth Amendment prohibits the enforcement of vague criminal laws, but the threshold for declaring a law void for vagueness is high. "The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Rather, it is sufficient if a

statute sets out an "ascertainable standard." *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921). A statute is thus void for vagueness only if it wholly "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

Here, Defendant claims that 18 U.S.C. 922(g)(1) is unconstitutionally vague, both facially and as applied to him. First, he asserts that, post-*Bruen*, it is impossible for ordinary people to know whether a felony conviction is sufficient to prohibit them from possessing a firearm under the statute. Second, he argues that he has two prior convictions do not involve violence or the use of a weapon and that an ordinary person would not know that those convictions were sufficient to dispossess him of his Second Amendment rights.

The Court disagrees. A person of ordinary intelligence with two prior adult felony convictions where they were sentenced for multiple years clearly would understand he has been convicted of a "crime punishable by imprisonment for a term exceeding one year" and, therefore, that they are prohibited from possessing a gun. 18 U.S.C. § 922(g)(1). Even assuming there is ambiguity regarding which felonies are sufficiently dangerous to warrant disarmament, statutes that are considerably less explicit on their faces than this one have survived vagueness challenges. *See Parker v. Levy*, 417 U.S. 733, 752–61, 94 S.Ct. 2547, 2564–65, 41 L.Ed.2d 439 (1974) (finding the Code of Military Justice's criminal penalties for "conduct unbecoming an officer" not unconstitutionally vague.); *see also United States v. Ashman,* 979 F.2d 469, 487 (7th Cir.1992), *cert. denied,* 510 U.S. 814, 114 S.Ct. 62, 126 L.Ed.2d 32 (1993) (RICO statute which outlawed acts that constitute a "pattern of racketeering activity" found not unconstitutionally vague.) Thus, Defendant's vagueness challenge fails.

**Conclusion**

Section 922(g)(1) does not violate the Second Amendment as applied to Mintz and the status is not unconstitutionally vague. Thus, the motion to dismiss [47] is denied.

**IT IS SO ORDERED.**

Date: 6/26/2024                  Entered: _____
                                                                                SHARON JOHNSON COLEMAN
                                                                                United States District Judge